IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Robert Dean Brown, Jr., | ) Civil Action No. 3:22-cv-01293-SAL |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **MOTION TO DISMISS AND COMPEL** |
| | ) **ARBITRATION** |
| Clayton Homes of Lexington; CMH Manufacturing, Inc.; CMH Homes, Inc.; and Stan White, | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

Pursuant to Federal Rules of Civil Procedure 12(b)(1), (3), and (6), and 9 U.S.C. §§ 3 and 4 of the Federal Arbitration Act ("FAA"), defendants CMH Homes, Inc.[1] and CMH Manufacturing, Inc. move to compel Plaintiff's claims to binding arbitration.[2] All of Plaintiff's claims arise out of a transaction affecting interstate commerce and are subject to a binding arbitration agreement that is governed by the FAA. Plaintiff's claims should therefore be dismissed and compelled to arbitration. Additionally, Plaintiff states no valid claim against defendant Stan White, and Mr. White should therefore be dismissed from this action pursuant to

---

[1] Clayton Homes of Lexington, which Plaintiff named as a defendant in his complaint, is not a separate corporate entity. It is a trade name for CMH Homes, Inc.

[2] Defendants file this motion to dismiss and compel arbitration in lieu of filing an answer, which is proper under Rule 12. *See* FED. R. CIV. P. 12(a)(4) (stating that when a defendant files a Rule 12(b) motion, its deadline for filing an answer is tolled until that motion is decided); 5C Charles Alan Wright & Arthur R. Miller, FEDERAL PRAC. & PROC. § 1360 (3d ed. 2004) (recognizing accepted practice of filing motion to stay and compel arbitration in lieu of filing answer, and collecting cases).

Rule 12(b)(6). To the extent Mr. White is not dismissed, Plaintiff's claims against him must also be compelled to arbitration.

## FACTUAL BACKGROUND

In February 2020, Plaintiff purchased a manufactured home, Serial Number NO2025453TNABM, (the "Home") from Defendant CMH Homes, Inc. d/b/a Clayton Homes of Lexington. (Compl. ¶ 3; Sales Agreement, Exhibit A).[3] CMH Manufacturing, Inc. manufactured the Home at its Norris plant in Bean Station, Tennessee. (Certificate of Origin, Exhibit B).

In conjunction with the sale of the Home, CMH Homes and Plaintiff executed a Binding Dispute Resolution Agreement ("BDRA"). (BDRA, Exhibit C). The BDRA applies to all claims arising out of or relating to, among other things, the Home; the documents related to the purchase and sale of the Home, including the construction and interpretation of those documents; any warranty, services, or service contract referred to in the documents related to the purchase and sale of the Home; any events leading up to the contract for the sale of the Home and related documents; and the design and construction of the Home. (*Id.* p. 1). The BDRA provides that "[a]ll Claims that cannot be settled through direct discussions and negotiation shall be submitted first to mediation," and the parties "agree to mandatory, binding arbitration . . . of all Claims that are not resolved in Mediation." (*Id.*). Further, although the BDRA is executed by CMH Homes and Plaintiff, it expressly applies to CMH Homes' agents, including defendant Stan White, and manufacturers of the Home, including defendant CMH Manufacturing. Thus, the BDRA applies to all parties to this action and requires arbitration of all of Plaintiff's claims.

---

[3] The Court is not limited to the allegations of the complaint in ruling on a motion to compel arbitration. *See Hay v. Barclays Bank Delaware*, No. 4:19-CV-03238-RBH, 2020 WL 9718810, at *2 (D.S.C. July 7, 2020) ("In considering a motion to compel arbitration, a court may consider matters outside the pleadings."); *Hughes v. Charter Commc'ns, Inc.*, No. 3:19-CV-01703-SAL, 2020 WL 1025687, at *3 (D.S.C. Mar. 2, 2020) (same).

The BDRA further provides that for all claims subject to its provisions, "the Parties hereby expressly and irrevocably waive any right to a trial by judge or jury." (*Id.* p. 4). Finally, the BDRA contains an acknowledgement that the buyer—in this case, Plaintiff—understands and agrees to the terms of the BDRA:

> **NOTICE:** BUYER UNDERSTANDS THAT THIS DISPUTE RESOLUTION AGREEMENT IS AN IMPORTANT AGREEMENT AND THAT THE TERMS OF THIS AGREEMENT AFFECT BUYER'S LEGAL RIGHTS. BY SIGNING THIS DISPUTE RESOLUTION AGREEMENT, BUYER ACKNOWLEDGES THAT BUYER HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY THIS AGREEMENT. BUYER AND SELLER FURTHER INTEND TO DIRECTLY BENEFIT AND BIND ALL BENEFICIARIES TO THIS AGREEMENT. IF BUYER DOES NOT UNDERSTAND ANY OF THE TERMS OR PROVISIONS OF THIS AGREEMENT, INCLUDING ADVANTAGES OR DISADVANTAGES OF ARBITRATION, THEN BUYER SHOULD SEEK INDEPENDENT LEGAL ADVICE BEFORE SIGNING THIS AGREEMENT. THE PARTIES HEREBY WAIVE THEIR RIGHTS, IF ANY, TO TRIAL BY JUDGE OR JURY, WHERE APPLICABLE. THE PARTIES HAVE ENTERED INTO THIS AGREEMENT KNOWINGLY, WILLINGLY AND VOLUNTARILY.

(*Id.*).

As part of the purchase and delivery of the Home, Plaintiff also received a Homeowner Manual ("Manual") from the manufacturer containing information about the Home, a one-year limited manufacturer's warranty, and a dispute resolution agreement with similar terms as the BDRA. (Manual pp. 10–13, Exhibit D). The Manual requires the "Parties" to resolve all disputes pursuant to the dispute resolution agreement, which requires mediation and then arbitration. (*Id.* p. 10). The dispute resolution agreement in the Manual applies to Plaintiff as the original purchaser, CMH Manufacturing as the manufacturer, and certain intended beneficiaries including any retail dealership or contractor involved in the sale, transport, and installation of the Home, any

person with an ownership interest in the Home, and any person who resides in the Home. (*Id.*). Like the BDRA, the dispute resolution agreement in the Manual has a broad scope, which includes the following:

> [A]ll pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action against Manufacturer, including but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, administrative law claims, and any other matter in question, not otherwise excepted herein, arising out of or relating to the Home, including, but not limited to, (i) the limited warranty provided with the Home, (ii) any events leading up to the purchase of the Home, (iii) the Beneficiaries' work and materials related to the Home, and (iv) the interpretation, scope, validity, and enforceability of . . . any documents related to . . . the improvements to the Home.

(*Id.*). The Manual provides that the parties agree to mediate all claims and "agree to mandatory, binding arbitration . . . of all Claims that are not resolved in Mediation" and further provides that for all claims subject to its provisions, "the Parties hereby expressly and irrevocably waive any right to a trial by judge or jury." (*Id.* at 13). Finally, the dispute resolution agreement in the Manual contains an acknowledgement that the original purchaser—Plaintiff—understands and agrees to the terms:

> **NOTICE: ORIGINAL PURCHASER UNDERSTANDS THAT THIS DISPUTE RESOLUTION AGREEMENT IS AN IMPORTANT AGREEMENT AND THAT THE TERMS OF THIS AGREEMENT AFFECT ORIGINAL PURCHASER'S LEGAL RIGHTS. ORIGINAL PURCHASER ACKNOWLEDGES THAT ORIGINAL PURCHASER HAS READ, UNDERSTANDS, AND AGREES TO BE BOUND BY THIS AGREEMENT. ORIGINAL PURCHASER AND MANUFACTURER FURTHER INTEND TO DIRECTLY BENEFIT AND BIND ALL BENEFICIARIES TO THIS AGREEMENT. IF ORIGINAL PURCHASER DOES NOT UNDERSTAND ANY OF THE TERMS OR PROVISIONS OF THIS AGREEMENT, INCLUDING ADVANTAGES OR DISADVANTAGES OF ARBITRATION, THEN ORIGINAL PURCHASER SHOULD SEEK INDEPENDENT LEGAL ADVICE BEFORE PURCHASING THE HOME. THE**

> **PARTIES HEREBY WAIVE THEIR RIGHTS, IF ANY, TO TRIAL BY JUDGE OR JURY, WHERE APPLICABLE. THE PARTIES HAVE ENTERED INTO THIS AGREEMENT KNOWINGLY, WILLINGLY, AND VOLUNTARILY.**

(*Id.*).

Plaintiff's complaint alleges he entered into a contract for the manufacture, delivery, and set-up of the Home and "the Defendants"—which include the manufacturer, retail dealer, and Stan White, an alleged agent of the manufacturer and retail dealer—"warranted the home to be of high quality and reasonably fit for use as a residence" and "also warranted that they would set up the home and would use a crane to piece the home together." (Compl. ¶¶ 4–6). Plaintiff alleges the "Defendants" breached the warranties and fraudulently misrepresented that the Home was a new home. (Compl. ¶¶ 8–14). Based on these allegations, Plaintiff asserts claims for breach of warranty and fraudulent misrepresentation. All of Plaintiff's claims fall squarely within the arbitration provisions of the BDRA and the Manual and should be compelled to arbitration.

## ARGUMENT

The policy of both the United States and South Carolina recognizes a "heavy presumption" in favor of arbitration of disputes. *Parsons v. John Wieland Homes & Neighborhoods of the Carolinas, Inc.*, 418 S.C. 1, 7, 791 S.E.2d 128, 131 (2016). This heavy presumption "requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Id.*; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). Under the FAA, an arbitration clause is separable from the

5

contract in which it is embedded and the issue of its validity is distinct from the substantive validity of the contract as a whole. *Parsons*, 418 S.C. at 8, 791 S.E.2d at 132.

The FAA applies in both federal and state court to any arbitration agreement involving interstate commerce unless the parties have contracted otherwise. *One Belle Hall Prop. Owners Assoc., Inc. v. Trammell Crow Res. Co.*, 418 S.C. 51, 59–60, 791 S.E.2d 286, 291 (2016). The FAA preempts any state law standing "as an obstacle to the accomplishment and execution of the [FAA's] full purposes and objectives." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011); *see also Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 539–41, 542 S.E.2d 360, 364 (2001) (holding, under the FAA, South Carolina's Consumer Protection Code cannot invalidate arbitration agreements in consumer contracts).[4]

When the FAA applies, a two-part test is used to determine whether a dispute is arbitrable. First, the court must decide if a valid agreement to arbitrate exists, and second, the court must find the specific dispute falls within the substantive scope of the agreement. *See Knight v. Rent-A-Ctr. E., Inc.*, No. CIV.A. 4:13-1734-MGL, 2013 WL 6826963, at *1 (D.S.C. Dec. 23, 2013) ("[A] court's role is limited to determining (1) whether the parties agreed to arbitrate and, if so, (2) whether the scope of the agreement to arbitrate encompasses the claims at issue."); *see also Parsons*, 418 S.C. at 7, 791 S.E.2d at 131 ("To determine whether an arbitration clause applies to a dispute, a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause."). The two-part test is satisfied in this case, and the FAA

---

[4] Because the BDRA is governed by the FAA, the South Carolina Uniform Arbitration Act does not apply here. *Walden v. Harrelson Nissan, Inc.*, 399 S.C. 205, 208, 731 S.E.2d 324, 325 (Ct. App. 2012) ("Generally, if the contract providing for arbitration involves interstate commerce, the Federal Arbitration Act (FAA) displaces the state arbitration statute.").

6

applies. The Court should grant this motion, compel the parties to arbitration, and dismiss this action, or, in the alternative, stay the action until the arbitration is completed.

**I.     The transaction involves interstate commerce and is therefore subject to the FAA.**

The FAA applies to any arbitration agreement executed in connection with a transaction involving interstate commerce in any way. *See* 9 U.S.C. § 2; *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995) (explaining the FAA applies to arbitration agreements involving transactions in interstate commerce, even if parties do not contemplate an interstate commerce connection). The FAA provides that a written arbitration agreement contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA defines "commerce" as "commerce among the several states." 9 U.S.C. § 1. In section 2 of the FAA, "[t]he word 'involving'. . . signals an intent to exercise Congress' commerce power to the full," and the phrase "'evidencing a transaction' mean[s] only that the transaction . . . turn[s] out, *in fact*, to have involved interstate commerce." *Allied-Bruce Terminix*, 513 U.S. at 276–78.

CMH Homes, Inc. and CMH Manufacturing, Inc. are Tennessee corporations, and each has its principal place of business in Tennessee. CMH Manufacturing manufactured the Home at its plant in Tennessee, then shipped it across state lines where it was sold to Plaintiff for installation on his property in Lexington, South Carolina. (Sales Agreement, <u>Exhibit A</u>; Certificate of Origin, <u>Exhibit B</u>). According to the BDRA, Plaintiff acknowledged and agreed that the FAA applies, "the Home contains component parts . . . manufactured outside of the state where the Home is sold and delivered," and "the manufacture, transportation, sale and use thereof ***has been and will continue to be regulated by the laws of the United States of America and involve and affect***

7

*interstate commerce*." (BDRA p. 2, Exhibit C) (emphasis added). The dispute resolution agreement in the Manual similarly provides that Plaintiff acknowledged and agreed "the Home was constructed with component parts manufactured outside of the state where the Home was manufactured and that the manufacture, transportation, sale, and use thereof has been and will continue to be regulated by the laws of the United States of America and involve and affect interstate commerce." (Manual p. 11, Exhibit D). Courts consider such language evidence of the satisfaction of the interstate commerce requirement. *See Zabinski*, 346 S.C. at 592, 553 S.E.2d at 116 (providing choice of law provisions in arbitration agreements are enforceable); *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 954 (N.D. Ohio 2009) (finding the FAA applied because "the Contract itself provides that '[t]he Federal Arbitration Act governs this Arbitration Clause. . . . The Arbitration Clause is governed by the Federal Arbitration Act, and not by any state arbitration law'" (citation omitted) (alterations in original)); *Staples v. Money Tree, Inc.*, 936 F. Supp. 856, 858 (M.D. Ala. 1996). Accordingly, the transaction at issue in this case involved interstate commerce, and the FAA applies to this action. *See Walden*, 399 S.C. at 208 n.2, 731 S.E.2d at 325 n.2.

**II.     Plaintiff entered into a valid arbitration agreement with Defendants.**

Plaintiff admits he purchased the Home manufactured by CMH Manufacturing. (Compl. ¶ 3). When he purchased the Home, he executed the BDRA and agreed "to be bound by the terms and conditions" of the dispute resolution agreement in the Manual. Plaintiff is therefore bound by the BDRA and the Manual to arbitrate his claims. *See Parsons*, 418 S.C. at 4, 791 S.E.2d at 129 (holding home buyers were bound by arbitration agreement in homeowner's manual).

Moreover, Plaintiff's claims rely upon the provisions and warranties provided in the Manual. (Compl. ¶¶ 4–10) (asserting a breach of warranty claim based upon alleged promises and

8

representations made by Defendants). Because Plaintiff necessarily relies upon the Manual to assert his claims, he cannot avoid the arbitration provisions contained in the dispute resolution agreement in the same section in the Manual. *See Pearson v. Hilton Head Hosp.*, 400 S.C. 281, 290, 733 S.E.2d 597, 601 (Ct. App. 2012) (explaining a non-signatory "is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause"); *see also Osborne v. Marina Inn @ Grand Dunes, LLC*, No. 4:08-cv-0490, 2009 U.S. Dist. LEXIS 87167, at *23 (D.S.C. Aug. 31, 2009) (holding a party cannot try to "hold another party to the terms of an agreement while simultaneously trying to avoid the agreement's arbitration clause"). Plaintiff is bound by the BDRA and dispute resolution agreement in the Manual, and the arbitration provisions of those agreements should be enforced.

**III.    The scope of the arbitration agreement encompasses Plaintiff's claims in this action.**

Whether a party agreed to arbitrate a particular dispute is a question of state contract law. *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002). Under South Carolina law, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . . A broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained." *Zabinski*, 246 S.C. at 598, 553 S.E.2d at 119; *see also Carlson v. S.C. State Plastering, LLC*, 404 S.C. 250, 261–62, 743 S.E.2d 868, 874–75 (Ct. App. 2013) (holding a tort claim was subject to arbitration because a broad arbitration clause "embraces every dispute between the parties having a significant relationship to the contract"). "To determine whether an arbitration clause applies to a dispute, a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause." *Parsons*, 418 S.C. at 7, 791 S.E.2d at 131 (citing *Zabinksi*, 346 S.C. at 597, 553 S.E.2d at 118). Further, arbitration

9

clauses apply to all disputes that fall within their scope and are not limited to breach of contract or warranty claims based on the document containing the arbitration provision. *Id.* (holding an arbitration provision was not limited to warranty claims solely because it was contained in a warranty provision in buyer's homeowner manual). "[U]nless the court can say with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute, arbitration should be ordered." *Pearson*, 400 S.C. at 287, 733 S.E.2d at 600.

The BDRA and dispute resolution agreement in the Manual apply to all claims arising out of or relating to the Home, the limited warranty provided with the home, the contract documents, and the construction, sale, and delivery of the Home. *See* (BDRA p. 1, <u>Exhibit C</u>; Manual p. 10, <u>Exhibit D</u>). All of Plaintiff's claims fall within the broadly defined scope of the arbitration agreement. Moreover, Plaintiff does not allege that he had any relationship with Defendants aside from the one created by his purchase of the Home. Thus, Plaintiff's claims must be arbitrated. *See Zabinski*, 246 S.C. at 598, 553 S.E.2d at 119 ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *see also Osborne*, 2009 U.S. Dist. LEXIS 87167, at *25 (compelling arbitration of claims concerning defectively constructed condominium, including tort, breach of express warranty, and breach of implied warranty of habitability claims).

 **IV.    Because all of Plaintiff's claims are subject to arbitration, the action should be dismissed.**

Because all of Plaintiff's claims are subject to arbitration, the Court lacks subject matter jurisdiction and is not a proper venue for the adjudication of those claims. Therefore, the Court should dismiss Plaintiff's claims. *See Cox v. Assisted Living Concepts, Inc.*, No. CIV.A. 6:13-00747, 2014 WL 1094394, at *7 (D.S.C. Mar. 18, 2014) ("Where all of the claims pled by a plaintiff are subject to an arbitration agreement, the court should dismiss the claims rather than merely stay further judicial proceedings."); *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*,

10

252 F.3d 707, 709–10 (4th Cir. 2001) ("Notwithstanding the terms of § 3 [of the FAA] . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."); *see also Brown v. Santander Consumer USA, Inc.*, No. 12-2825, 2013 U.S. Dist. LEXIS 110564, at *4 (D.S.C. July 16, 2013) ("If all of the claims asserted in a complaint are subject to arbitration, dismissal of the complaint is appropriate.").

In the alternative, should the Court decide not to dismiss Plaintiff's claims, Defendants request that the Court stay this entire action, including discovery, until the completion of the arbitration action. 9 U.S.C. § 3 (providing "the court . . . upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . *shall* on application of one of the parties stay the trial of the action" (emphasis added)); *Hensel v. Cargill*, No. 99-3199, 1999 WL 993775, at *4 (6th Cir. Oct 19, 1999) ("Under § 3 of the FAA, if any separate claim is referable to arbitration, then a stay of proceedings on the remaining claims is *mandatory*." (emphasis added)).

V. **Plaintiff's claims against Stan White should be dismissed because Mr. White is fraudulently joined and Plaintiff has no claim against him.**

Stan White is fraudulently joined and should be dismissed pursuant to Rule 12(b)(6). *See Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999) ("The 'fraudulent joinder' doctrine permits removal when a non-diverse party is (or has been) a defendant in the case. . . . This doctrine effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, ***dismiss the nondiverse defendants***, and thereby retain jurisdiction." (emphasis added)). Mr. White is improperly joined as a defendant because there is no possibility that Plaintiff can establish a cause of action against him. *See Mayes*, 198 F.3d at 461.

The sale, manufacture, and installation of Plaintiff's home was governed by contract as noted by Plaintiff in the complaint. *See* Compl. ¶¶ 2–7. The contracts that form the basis for the

11

sale of the home to Plaintiff and Plaintiff's claims required **CMH Homes, Inc.** to deliver, install, set up, service, correct, and repair the home. *See generally* (Sales Agreement, Exhibit A; Retailer Closing Agreement, Exhibit E). The contracts do not create any independent obligations for Mr. White, and Mr. White as an agent of CMH Homes cannot be personally liable for CMH Homes' contractual duties. *Skinner & Ruddock, Inc. v. London Guarantee & Acc. Co.*, 239 S.C. 614, 619, 124 S.E.2d 178, 180 (1962).

Mr. White was an employee of CMH Homes and acted within the course and scope of his employment at all relevant times. *See* (Compl. ¶ 1). Mr. White cannot be liable for fraudulent misrepresentation as a matter of law because he did not owe any independent duty to Plaintiff, Plaintiff has not alleged that he had sufficient managerial responsibilities and control, and Plaintiff alleges no facts to support a conclusion that Mr. White may be personally liable. *See Benjamin v. Wal-Mart Stores, Inc.*, 413 F. Supp. 2d 652, 657 (D.S.C. 2006) (finding fraudulent joinder of a store manager on the ground that he had no independent duty to the plaintiff, in part because he lacked sufficient control over the business); *see also Breaux v. HomeFirst Agency Inc.*, No. 2:20-CV-00168, 2020 WL 6864712, at *7 (W.D. La. Oct. 22, 2020) ("Finally, HomeFirst argues that Plaintiffs' petition contains merely conclusory allegations of knowledge and verbal promises, assurances and intentional misrepresentations concerning the quality, workmanship and repair of the manufactured home by the Louisiana Defendants. The Court agrees. . . . Because plaintiffs do 'not offer any facts in [their] original petition or [declarations] to support the conclusion that' the Louisiana Defendants would be personally liable, they have 'not shown a valid reason to join [the Louisiana Defendants] in this action.'"), *report and recommendation adopted*, No. 2:20-CV-00168, 2020 WL 6839713 (W.D. La. Nov. 20, 2020); *see also Fuller v. CMH Homes, Inc.*, No.

CIV.A. 13-0502, 2013 WL 2524429, at *2 (W.D. La. June 10, 2013) (finding improper joinder of a CMH salesman/manager).

Further, the contracts underlying Plaintiff's claims each contain a merger clause. *See* (Sales Agreement pp. 1–2, Exhibit A) (providing "Buyer acknowledges that neither Seller nor any of its agents have made any oral representations concerning the quality or character of the home or its contents. All representations concerning the quality and character of the home are stated in this Sales Agreement, including any addenda, and the Retailer Closing Agreement" and "there are no other agreements or understandings between the parties hereto"); (Retailer Closing Agreement p. 4, Exhibit E) ("Buyer has read and agrees to be bound by the terms of this Retailer Closing Agreement . . . which, together with the . . . Sales Agreement contains the entire agreement of the parties with respect to the purchase of the Home."). Therefore, by contract and by law, Plaintiff cannot state a valid claim against Mr. White, and Mr. White is not properly named and should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion and compel the parties to arbitrate their dispute, with the duty on Plaintiff to initiate the arbitration process. The Court should further dismiss this action or, in the alternative, stay the action pending completion of the arbitration. Additionally, the Court should dismiss Stan White from this action pursuant to Rule 12(b)(6).

*(signature page attached)*

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: *s/Nicholas A. Charles*
    A. Mattison Bogan
    Federal Bar No. 9826
    E-Mail: matt.bogan@nelsonmullins.com
    Nicholas A. Charles
    Federal Bar No. 12417
    E-Mail: nick.charles@nelsonmullins.com
    1320 Main Street / 17th Floor
    Post Office Box 11070 (29211-1070)
    Columbia, SC  29201
    (803) 799-2000

*Attorneys for Defendants CMH Manufacturing, Inc.; CMH Homes, Inc.; and Stan White*

Columbia, South Carolina

April 21, 2022